IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:17-CV-00326-RJC-DSC

| | |
|---|---|
| **WINESTORE HOLDINGS, LLC,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>)<br>**JUSTIN VINEYARDS & WINERY, LLC** )<br>**AND THE WONDERFUL COMPANY,** )<br>**LLC,** )<br>)<br>**Defendants.** ) | **MEMORANDUM AND**<br>**RECOMMENDATION** |

**THIS MATTER** is before the Court on "Defendants Justin Vineyards & Winery LLC and The Wonderful Company LLC's Motion to Dismiss, or in the Alternative, Stay," Doc. 4, and the parties' associated briefs and exhibits, Docs. 5, 6, 12 and 13.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendants' Motion to Dismiss be granted, as discussed below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Accepting the factual allegations of the Complaint (Doc. 1) as true, Plaintiff is a Charlotte-based retailer of wine, with five stores located throughout North Carolina. Defendant Justin Vineyards & Winery LLC is a California based retailer of wine. Justin offers its products in stores throughout the United States and online. Justin Vineyards is a subsidiary of Defendant The Wonderful Company LLC.

Plaintiff filed U.S. Trademark Application Serial No. 86/851,094 for the mark OVERBROOK on December 16, 2015, for use with wine in International Class 33. Plaintiff's Application was approved for publication by the United States Patent and Trademark Office on April 13, 2017, and published in the *Official Gazette* on May 23, 2017. Plaintiff has been using the OVERBROOK mark in connection with its wine since at least as early as April 4, 2016.

On April 25, 2017, Defendants' counsel emailed Plaintiff's counsel. The email stated in relevant part:

> We have learned that your client has filed a trademark application for "overbrook", US Serial No. 86851094, for use with wine in International Class 33.
>
> Our client believes that this trademark is too similar to its OVERLOOK® trademark and its use could be interpreted as intending to trade off of the goodwill of our client's distinctive trademarks, creating a likelihood of confusion, mistake, and deception as to your client's affiliation, connection, or association with JUSTIN among consumers and the trade. Such unauthorized uses may also dilute our client's trademarks by, among other things, blurring the distinction between JUSTIN and your client's company. These unauthorized actions, therefore, may constitute trademark infringement, false designation of origin and unfair competition under the laws of the United States and state law.
>
> JUSTIN prefers to settle matters amicably where possible. Therefore, please contact me at your earliest convenience…

Doc. 1, Ex. B.

Plaintiff filed this action on June 14, 2017, seeking a declaratory judgment that use of its OVERBROOK mark does not violate any federal or common law or any purported trademark rights of Defendants. On June 15, 2017, Justin Vineyards filed a Notice of Opposition with the Trademark Trial and Appeal Board ("TTAB") to commence an opposition proceeding against Plaintiff's Application. On June 20, 2017, Plaintiff moved to suspend the Opposition pending disposition of this action. Justin Vineyards filed an opposition to Plaintiff's Motion to suspend on July 31, 2017. On September 11, 2017, the TTAB issued its decision granting Plaintiff's Motion to suspend.

On September 21, 2017, Defendants filed their Motion to Dismiss for lack of subject matter jurisdiction. Defendants contend that their counsel's email was insufficient to meet the case or controversy requirement for issuance of a declaratory judgment.

Defendants' Motion has been fully briefed and is ripe for determination.

## II. DISCUSSION

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal where the court lacks jurisdiction over the subject matter of the action. Fed. R. Civ. P. 12(b)(1). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Plaintiff bears the burden of proving the existence of subject matter jurisdiction. See Evans v. B.F. Perkins, Co., 166 F.3d 642, 647 (4th Cir. 1999). At the motion to dismiss stage, "the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991); see also Evans, 166 F.3d at 647. A court should grant a Rule 12(b)(1) motion "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Evans, 166 F.3d at 647.

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The phrase "a case of actual controversy" in the Act refers to the types of "cases" and "controversies" that are justiciable under Article III of the U.S. Constitution. 3M Co. v. Avery Dennison Corp., 673 F.3d 1372, 1376 (Fed. Cir. 2012) (citing Aetna Life Ins. v. Haworth, 300 U.S. 227, 239-40 (1937)).

Prior to the Supreme Court's decision in MedImmune, Inc. v. Genetech, Inc., 549 U.S. 118, (2007), when confronted by a plaintiff seeking a declaratory judgment of non-infringement in trademark and like cases, courts in the Fourth Circuit employed a two-pronged test, borrowed from the Federal Circuit, to determine whether a case or controversy existed: (1) the defendant's conduct must have created a reasonable apprehension by the plaintiff that the defendant would initiate litigation if the plaintiff continued the allegedly infringing activity, and (2) the plaintiff must have actually produced the infringing product or have prepared to produce it. See Superguide Corp. v. Kegan, 987 F.Supp. 481, 483 (W.D.N.C. 1997) (citing Windsurfing Int'l, Inc. v. AMF Inc., 828 F.2d 755, 757-58 (Fed. Cir. 1987)); CAE Screenplates, Inc. v. Beloit Corp., 957 F.Supp. 784, 788-89 (E.D. Va. 1997) (collecting Federal Circuit cases); Bioxy, Inc. v. Birko Corp., 935 F.Supp. 737, 741 (E.D.N.C. 1996) (same); Ryobi Am. Corp. v. Peters, 815 F.Supp. 172, 173 (D.S.C. 1993) (citing Spectronics Corp. v. H.B. Fuller Co., Inc., 940 F.2d 631, 634 (Fed. Cir. 1991)); see also 10B Charles Alan Wright et al., Federal Practice and Procedure § 2761 (4th ed. 2016) (describing two-pronged test).

In MedImmune, the Supreme Court revisited its holdings regarding constitutional standing requirements in declaratory judgment actions and expressly rejected the reasonable apprehension component of the Federal Circuit's two-prong test. See 549 U.S. at 132 n.11. Following MedImmune, the Federal Circuit abandoned its two-prong test, see SanDisk Corp. v. STMicroelectronics, Inc., 480 F.3d 1372, 1380 (Fed. Cir. 2007), and courts within the Fourth Circuit have followed suit. See InVue Sec. Prods, Inc. v. Merch. Techs., Inc., No. 3:12-cv-88-RJC-DSC, 2012 WL 2577452, at *2-3 (W.D.N.C. July 3, 2012); Alpharma, Inc. v. Purdue Pharma L.P., 634 F.Supp.2d 626, 629 n.3 (W.D. Va. 2009); Neuralstem, Inc. v. StemCells, Inc., 573 F.Supp.2d 888, 891-95 (D. Md. 2008); Apotex, Inc. v. Novartis AG, No. 3:06-cv-698, 2007 WL

5493499, at *4 (E.D. Va. Sept. 4, 2007); see also, Surefoot LC v. Sure Foot Corp., 531 F.3d 1236, 1238, 1241-44 (10th Cir. 2008) (Gorsuch, J.) (where putative trademark infringer sought declaratory judgment, MedImmune prevented application of Federal Circuit's two-prong test that had been largely adopted by Tenth Circuit); U.S. Water Servs., Inc. v. ChemTreat, Inc., 794 F.3d 966, 971-73 (8th Cir. 2015); Nike, Inc. v. Already, LLC, 663 F.3d 89, 94-96 (2d Cir. 2011); Vantage Trailers v. Beall Corp., 567 F.3d 745, 748-49 (5th Cir. 2009).

For there to be a case or controversy under the new standard, a declaratory judgment plaintiff must show that "the dispute is definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts." MedImmune, 549 U.S. at 127. The Federal Circuit has held that a substantial controversy exists "where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license." SanDisk Corp. 480 F.3d at 1381 (Fed. Cir. 2007).[1]

Defendants argue that counsel's single email does not create an actual controversy giving rise to declaratory judgment jurisdiction.

This Court's analysis in InVue Security Products, Inc. v. Merchandising Technologies, Inc., 3:12-cv-88-RJC-DSC, 2012 WL 2577452 (W.D.N.C. July 3, 2012) is instructive here. In InVue, the patent holder sent the marketer of a camera product a request to meet and confer

---

[1] This Court has held, "the rule applied to declaratory judgment issues in patent disputes … carrie[s] over to be applied in trademark cases. There is no reason to expect this overlap to stop after the 2007 MedImmune decision." Americal Corp. v. Int'l Legwear Group, Inc., No. 1:10-cv-65, 2010 WL 6001592, at *6-7, (W.D.N.C. May 14, 2010) (finding declaratory judgment jurisdiction in trademark case by following MedImmune and other patent cases); see also Windsurfing Int'l, Inc. v. AMF, Inc., 828 F.2d 755, 757 (Fed. Cir. 1987) (finding that "declaratory judgment actions involving trademarks are analogous to those involving patents").

regarding the product's possible use of technology infringing on its patent. In response, the marketer of the camera product filed a declaratory judgment action. This Court determined that

> Despite the more lenient actual controversy requirement, the Federal Circuit has held that "a communication from a patent owner to another party, merely identifying its patent and the other party's product line, without more, cannot establish adverse legal interests between the parties, let alone the existence of a definite and concrete dispute." Hewlett-Packard Co. v. Acceleron LLC, 587 F.3d 1358 (Fed. Cir. 2009). "How much more is required is determined on a case-by-case analysis." 3M, 673 F.3d at 1379; see id. at 1381 (concluding that the patentee's statement that claim charts would be forthcoming and the history of patent litigation between the parties could constitute a case or controversy); Hewlett-Packard, 587 F.3d at 1363 (concluding that a case or controversy existed based upon the patent owner's assertion of a patent as relevant to the other party's specific product line, imposition of a short deadline for response, and insistence that the other party not file suit).

Id. at *3. This Court determined that the marketer's exclusive reliance on the meet and confer letter as the jurisdictional basis for a declaratory judgment action was insufficient. Id. The Court also noted that "it is in the public interest to allow parties to resolve matters privately, and is reluctant to exercise jurisdiction. Defendant's letter in this case does not put Plaintiff 'in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do.' SanDisk, 480 F.3d at 1381." Id. at *4; see also, Artful Color Inc. v. Hale, 928 F.Supp.2d 859, 862 (E.D.N.C. 2013)("Considering next whether plaintiff has an objectively reasonable apprehension of litigation, the Court notes that a cease and desist letter *alone* may not amount to an actual controversy.")(italics in original).

Defendants' April 25, 2017 email does not even rise to the level of a cease and desist letter. The email expresses a preference "to settle matters amicably" and asks Plaintiff to contact Defendants at their "earliest convenience" to discuss the matter. For these reasons, the Court finds that Defendants' email is insufficient to meet the actual controversy requirement for a Declaratory Judgment action, and respectfully recommends that Defendants' Motion to Dismiss be granted.

## III. ORDER

IT IS ORDERED that all further proceedings in this action, including all discovery, are STAYED pending the District Judge's ruling on this Memorandum and Recommendation and Order.

## IV. RECOMMENDATION

FOR THE FOREGOING REASONS, the undersigned respectfully recommends that "Defendants Justin Vineyards & Winery LLC and The Wonderful Company LLC's Motion to Dismiss, or in the Alternative, Stay," Doc. 4, be GRANTED and Plaintiff's Complaint be DISMISSED WITHOUT PREJUDICE.

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Robert J. Conrad, Jr.

**SO RECOMMENDED AND ORDERED.**

Signed: January 23, 2018

David S. Cayer
United States Magistrate Judge